THOMAS, Justice.
The respondent filed a bill of complaint against the petitioner seeking injunction and other relief. A temporary injunction was issued without notice, then motions were made to dissolve the injunction and dismiss the bill. The chancellor granted the motion to dismiss, with leave to amend,, but declined to dissolve the restraining order. Upon petition for certiorari presented here the court held that it was error to continue the temporary injunction “in full force” when the support for it, the allegations of a bill that was no longer effective, had failed so the petition for certiorari was granted and the order denying dissolution was quashed. Hall v. Hanford, Fla., 64 So.2d 303.
In disposing of the matter this court stipulated that the respondent could re-apply for an injunction upon filing an amended bill of complaint.
This introduces the second phase of the litigation. The respondent filed an amended bill of complaint, sought and was granted a new temporary restraining order. The chancellor decreed that the 'bond furnished upon the issuance of the first injunction would suffice as security for the second.
We are presently confronted with questions challenging the sufficiency of the amended bill of complaint and the propriety of the chancellor’s order with reference to using the bond provided in the first instance as indemnity in the later proceeding.
The suit is one against the petitioner and the mayor and councilmen of North Miami Beach. We will now epitomize the allega *475 tions of the amended bill of complaint to see if the pleading- should have been held to withstand the motion to dismiss.
The respondent owns property designated as “Tracts Al and A2” on a plat of which the following is an approximation:
“the proper relationship” to be different, evidently to the extent of six feet, from the first map to which we have alluded; that notwithstanding this commitment he erected store buildings encroaching two feet on the street to the east; and that he

Between the parcels is an alley twenty feet in width, but only 'seventeen feet wide between Par-cel “Al” and the area owned by the petitioner and designated by us as “X”. It is important to note that the plat by which petitioner bought his property was recorded in 1915 at page 103 of Plat Book 2; that the plat bearing the designations “A1” and “A2” was recorded in 1947 at page 46 of Plat Book 47; and that on it the parcel marked “X” carried this inscription by the subdivider: “not a part of this plat (PB 2-103)-”. So it is plain that in re-subdividing the property there was no intention of disturbing the location of the land purchased 'by the petitioner in accordance with a plat recorded more than thirty years before.
The respondent makes no charge that the petitioner did not purchase parcel “X”, a tract one hundred fifty feet square and consisting of six lots according to a plat then on record, -but she claims that the plat was erroneous “in that the position of the subdivision was shown to bear a wrong relation with the outer boundaries and corners [of the section in which it was situated] as established by United States government survey.”
She alleged that the petitioner approved, that is, acquiesced in, the later plat showing sought to erect buildings “to the north” that would not only encroach two feet on the street but also four feet on the alley. She averred that an existing building owned by the petitioner encroached one and three-tenths feet on the alley. The contemplated structure, so it was charged, had been approved by the city.
The respondent’s position is, in sum, that there was. a discrepancy in surveys, that “her” survey was correct having been made from the point of beginning adopted in the government survey whereas the “survey of the defendant Hall,” petitioner, was “made by the ‘occupation’ method using artificial points as markers.” This, according to the bill, has resulted in a “ ‘No man’s land’ ” of six feet between the petitioner’s property and the street on the south. In respondent’s view all this means that petitioner though entitled to one hundred fifty feet, north and south, is claiming six feet more and consequently is encroaching now and threatening to encroach again.
The respondent asked the court to recognize the survey for which she contended, to enjoin proposed encroachments, and to direct the removal of the buildings already encroaching.
*476 It seems to us that the respondent’s position is untenable because she places too much stress on the superiority of the starting point shown in the government survey over the point used by the surveyor who set the corners of the property eventually conveyed to the petitioner. We think this is a fair deduction from the circumstances of this case because regardless of the starting point the surveyor employed in fixing the lines of the respondent’s property, he showed the relative position of the petitioner’s property. When he fixed the location of respondent’s tract he showed it in its relationship to the petitioner’s lots and by the notation we have quoted he not only demonstrated that he had established the boundaries of respondent’s land in their relationship to petitioner’s, but also clearly expressed the intention not to disturb the lines of petitioner’s property. In such a state of facts if the north and south boundaries of petitioner’s property were moved the north and south boundaries of respondent’s property and the property of all others •in the re-su'bdivision would have to be moved correspondingly, all, supposedly, to make petitioner’s south boundary coincide with the north line of the street. And this would be decreed despite the existence of structures of a permanent nature and despite the fact, to repeat, that the creator of the plat by which respondent purchased recognized the location — the relative location — of the petitioner’s property, as it had been established for thirty years.
A close study of the amended bill of complaint has led us to the conviction that it would not be equitable to decree that the position of petitioner’s property be altered.
It is not clear to us whether the respondent’s charges of present encroachment arise from her theory that an error of six feet was made in the first survey. If such is the case the bill should be finally dismissed. On the other hand if the pleader can convince the chancellor that she is positioned definitely to allege that there is an encroachment irrespective of the disparity of six feet she has claimed then the chancellor may allow further amendment.
The obligation of the surety on the bond first given could not merely by an order of the court be enlarged to encompass liability arising from a subsequent order.' Any responsibility resulting from the first undertaking would be confined to that transaction and would be wholly separate and distinct from liability resulting from the second order, so far as the surety is concerned. In the absence of an effectual commitment by the surety itself to become responsible for damages resulting from the improper issuance of the second order, a new bond was necessary.
For the reasons we have set forth the petition for certiorari is granted with directions (1) to dismiss the bill of complaint with leave to amend if the chancellor thus decides, and (2) to dissolve the temporary injunction.
Reversed.
ROBERTS, C. J., and MATHEWS and DREW, JX, concur.